Kern Unemployment Compensation Case.
H. J. Heinz Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued April 16, 1952; reargued November 13, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*Donald W. Ebbert,* with him *W. Gordon Rauck* and *Thorp, Reed & Armstrong,* for appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for appellee.

OPINION BY HIRT, J., January 20, 1953:

The present four appeals by the defendant employer, from the decisions of the Unemployment Compensation Board of Review to the effect that the claimants are not barred from unemployment compensation, raise a single question of law. For that reason the appeals will be consolidated for disposition in this opinion.

Claimants were all discharged by their employer, the defendant, on February 1, 1951. On the next day three of them received vacation pay for the following two weeks and the other for one week. These payments related to benefit claim periods and under §4(u) of the amendment of the Unemployment Compensation Law, in the Act of September 29, 1951, P. L. 1580, 43 PS §753, the claimants cannot be regarded as unemployed for the weeks for which such payments were

made. Cf. *Fazio Unemployment Compensation Case*, 164 Pa. Superior Ct. 9, 63 A. 2d 489. So much is conceded. But the Board found that they were eligible for unemployment compensation for succeeding claim weeks. H. J. Heinz Company is an aggrieved party with the right of appeal in these cases under §510 of the Act, as amended, 43 PS §830.

On January 30, 1951, one Bamrick, an employe in the shipping department, was discharged after warning for smoking on a part of defendant's plant, contrary to posted company rules which had been agreed to by Local 325, Canning and Pickle Workers of America. Thereupon most of the employes in that area of the plant abandoned their jobs, walked out of the plant and assembled in the street in protest of Bamrick's discharge. All of defendant's employes were members of that union. On the day of Bamrick's discharge the union lodged a routine grievance with the company in accordance with the terms of its contract with the company. On the following morning the president and the business agent of the union instructed the assembled employes to return to work, stating that the propriety of Bamrick's discharge was in the process of determination by the grievance committee. Later in the same day when the employes appeared in the union hall they were again urged by their union officers to return to work; they however refused. Early in the afternoon of January 31, pickets appeared at the main gate of defendant's plant carrying placards displaying the legend "No Work. H. J. Heinz unfair labor practice, AF of L. 325". During that afternoon some employes were dissuaded from returning to work in the plant by the picketing. When fifteen pickets appeared the next day, two large signs, authorized by the union, were displayed on the premises stating "This is an unauthorized strike. Employees are urged

to report for work as usual—Local 325". In response to the urgings by their union about 80% of the total of 2300 employes then returned to work. Appellants Kern and Solman came to the gate of the plant in the afternoon of February 1, and were then induced by two of their fellow workmen to carry picket signs and actively join the picket line. Because of that conduct they were discharged by company officials on that day. Appellant Jackson had knowledge of the unauthorized strike when he appeared at the gate on February 1. With that knowledge he nevertheless was persuaded to carry a similar sign and he too was discharged for picketing. Appellant Fernandes was discharged at the same time for the same reason. There was nothing to prevent all of the appellants from returning to work on February 1; they remained away from choice.

Local 325 was the bargaining agent of all of defendant's employes and on their behalf had entered into a contract with H. J. Heinz Company, providing: "Section 2. The Union agrees to accept and abide by all of the terms and conditions of this contract and during its term will not permit its members to engage in any walkout, sitdown, slowdown, or other interference with or interruption of work, and that it will not call, countenance or otherwise encourage any walkout or strike". The Company in the same section agreed: "to accept and abide by all the terms and conditions of this Contract and during its term [that it would not] lock out the employees". In Section 5 it was provided: "Union members, foremen, foreladies and other recognized representatives of the Company are *bound* to observe the respective covenants in this Contract of the Company and the Union". (Emphasis added.)

Thus it is clear that these appeals have this controlling fact in common: all four appellants violated

the terms of the contract made on their behalf by their union, by picketing the defendant's plant during a walkout. The Board nevertheless concluded that the appellants were not chargeable with willful misconduct and that they were entitled to unemployment compensation following the claim weeks for which they had received vacation pay.

The union in its contract with the company, in exchange for other machinery set up by the contract for the settlement of disputes, agreed that it would not permit its members to engage in any walkout or strike during the term of the contract. This agreement made by the union as the agent of the claimants, was binding upon them. Nevertheless they not only participated in the strike on January 30, 1951, but on February 1 carried signs identifying themselves as pickets, and joined others who were then picketing the main gate through which employes of the company would have to pass to return to work and thus interfered with production in the defendant's plant. Their obvious purpose as pickets was to dissuade defendant's employes from returning to work until they, by means of the walkout, had forced the defendant to reinstate Bamrick, the discharged shipping clerk, although the merits of the company's action as to him was then before the grievance committee in strict compliance with the contract. This misconduct of the claimants in assuming the role of pickets was connected with their work and was voluntary and *willful.* All of the claimants therefore were barred from unemployment compensation on that account. Section 402(e) of the Unemployment Law as last amended by the Act of May 23, 1949, P. L. 1738, 43 PS §802(e) provides: "An employe shall be ineligible for compensation for any week . . . in which his unemployment is due to his discharge

or temporary suspension from work for willful misconduct connected with his work".

The Board of Review took additional testimony and although in substantial agreement with the findings of the Referee, as reflected in our review of the facts, found in addition: "The claimants participated only in activities which were normally incident to a labor dispute during a period of work stoppage". This finding, which is also a conclusion, is in total disregard of the facts. Actually the only labor dispute was between the company and a. discharged shipping clerk and this dispute then was before the grievance committee in the process of solution.

By making the grievance of the discharged Bamrick, their own, these claimants were not immunized thereby, under §402(d) from the consequences of this willful misconduct connected with their work—misconduct which involved flagrant violations of their duty under the contract with the employer by which they were bound. The amending Act of 1949, supra, denying compensation for "willful misconduct" intended to apply to the Unemployment Compensation Law in all of its provisions, without exception, including §402(d) which had been a part of the law since the amendment of April 23, 1942, P. L. 60. We have so held in *Muldoon Unemploy. Comp. Case,* 170 Pa. Superior Ct. 625, 90 A. 2d 599 which is parallel in its facts and identical in principle; the present appeals are ruled by that case.

The order in each appeal is reversed in part to accord with this opinion.