MASSENGALE v. REVIEW BOARD OF INDIANA
EMPLOYMENT SECURITY DIVISION ET AL.

[No. 19,585. Filed December 15, 1961.]

588

*Vincent Massengale, pro se.*

*Edwin K. Steers*, Attorney General, and *Keith Campbell*, Deputy Attorney General, for appellee Review Board.

*John T. Rocap*, of Indianapolis, for appellee, F. H. Langsenkamp Company.

RYAN, C. J.—This is an appeal from the decision of the Review Board of the Indiana Employment Security Division, which decision denied unemployment benefits to the appellant. The statement of facts and findings and conclusions of the Board are set out in full as follows:

"STATEMENT OF FACTS: The claimant was employed for approximately fifteen months by the employer herein as a shipping and receiving clerk. On Monday, July 18, 1960, the claimant advised the employer that he was resigning his employment as of Friday, July 22, 1960, for the reason that he was dissatisfied with the apportionment of the work. Near the end of his work shift on said date of July 18, 1960, the claimant requested permission to be absent on the following day, Tuesday, July 19, 1960. Said request was made to the employer's vice-president, who was the plant manager and immediate supervisor of the claimant. The claimant admittedly refused to give the vice-president any reason for his intended absence except that it was 'strictly personal.' It is further admitted by the claimant that said vice-president refused claimant's request and informed him that if he was absent, he would be discharged. The vice-president testified: 'I told him again, or re-confirmed to him that we were in our busiest season of the year and that his job was of the utmost importance in the manufacturing department of the shop area and his being off would create a serious condition to our normal production, or words to that effect.' (Tr. p. 5, ll. 21-25) Upon being refused his request to be absent, the claimant then contacted and had a conversation with the president. The claimant contends that said president gave him permission to be off the following day. However, the president testi-

fied that although the claimant repeatedly requested him to consent to the absence, he, the president, advised the claimant that he woud not override the decision of the vice-president and advised the claimant not to be absent unless he had permission. The vice-president further testified, and the president confirmed it in his testimony, that he had sole authority in the operation and management of the department in which the claimant was employed including power to discharge an employee. The claimant failed to report for work on the said day of Tuesday, July 19, 1960. The claimant did report for work the following day, Wednesday, July 20, 1960, and found that his time card had been 'pulled' and he was then advised that he had been discharged from his employment for reason of his failure to report for work the day previous. At the time of claimant's discharge, he was being paid $2.10 per hour, ten hours a day and frequently working overtime on Saturdays at a time and a half pay rate. The claimant also testified that at the time he announced his resignation he had no prospect of other employment.

"FINDINGS AND CONCLUSIONS: The Board finds that the claimant was employed for approximately fifteen months by the employer herein.

"It is further found that on July 18, 1960, the claimant advised the employer that he was resigning from his employment effective July 22, 1960.

"It is further found that on said date of July 18, 1960, claimant requested of his immediate supervisor permission to be absent from work on the following day, July 19, 1960.

"It is further found that the claimant refused to give a specific reason as to why his absence was necessary, and his request was denied by his supervisor.

"It is further found that after being denied permission to be absent, claimant requested permission from the president of the employing company and was again refused.

"It is further found, that notwithstanding the refusal of the employer to give permission, claimant was absent from work on said date of July 19, 1960.

"It is further found that at the time claimant re-

quested permission to be absent, he was advised that his services were needed and that his absence would be detrimental to the employer's business.

"The Board concludes from all the evidence that the claimant's acts and omissions constituted an intentional and willful disregard of the employer's best interest, and he was properly discharged from his employment on July 20, 1960, for misconduct in connection with his work."

By statutory mandate under Burns' §52-1542 k., we must accept the facts as found by the Board and can disregard them only in the event that they are not sustained by any evidence of probative value, *Massengale* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 604, 94 N. E. 2d 673, and we can consider only the evidence supporting such findings. *National Furniture Mfg. Co.* v. *Review Bd. of Ind. E.S.D.* (1960), 131 Ind. App. 260, 170 N. E. 2d 381.

While the Indiana Employment Security Act should be construed liberally to give effect to its beneficent, humane and sound economic policy, such liberality does not extend to permission of giving benefits to those whom the legislature has positively determined should not have such benefits. Such construction would be judicial legislation which might nullify the purpose of the Act. *Blakely* v. *Review Board of Indiana Emp. Sec. Div.* (1950), 120 Ind. App. 257, 90 N. E. 2d 353.

As this court stated in *Tyler* v. *Review Bd., Ind. Emp. Sec. Div. et al.* (1956), 126 Ind. App. 223, 132 N. E. 2d 154, at 126 Ind. App. page 228:

"Further, the nature and appropriateness of the facts found by the Board rests, we think, in the circumstances made manifest by the evidence in each particular case. The properly substantiated act or conduct of the employee may, in one case, show a wanton or willful disregard of the employer's interest, and in another case a deliberate vio-

lation of the employer's rules, while in yet another case a wrongful intent; and the evidence in a particular case may be such as to show, as frequently appears, acts or conduct encompassing several or all of the noted infractions evidencing 'misconduct' within the meaning of the unemployment compensation acts.

"The Review Board, composed, as it often is, of men of practical knowledge and perhaps without legal training, is not stifled in its proceedings and exercise of statutory functions by the technical niceties that often embarrasses the dispensation of justice in the orthodox legal forums. And if its findings, taken in entirety and in relative proportion, make manifest that the acts and conduct of the claimant in one or more particulars constitute 'misconduct' within the meaning of the Unemployment Compensation Act, as such 'misconduct' has been interpreted and defined by our courts, [See, *Merkle* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524; *A. Winer, Inc.* v. *Review Bd., Emp. Sec. Div.* (1950), *supra,*] such findings, in that particular, are sufficient to support the Board's decision without the necessity on the part of the Board of expressing such misconduct in any particularized words or any technical language."

In construing what consists of misconduct, this court stated in *Merkle* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524, at 120 Ind. App. page 112, 90 N. E. 2d at page 525:

"The great majority of the cases on the subject under consideration sustain the rule that 'in order to constitute "misconduct" within the meaning of the unemployment compensation acts excluding employees discharged for "misconduct" from their benefits, an act must show a wanton or wilful disregard for the employer's interests, a deliberate violation of the employer's rules, or a wrongful intent.' Anno., 146 A.L.R. 243. In the foregoing annotation we find a statement from 34 *Halsbury's* Laws of England (2d Ed.), p. 525, to the following effect: 'The most

general types of cases in which, on proof of the offence, it has been held that employment was lost through misconduct are:—wilful absence from work without leave; . . .' "

A careful review of the evidence adduced before the Board leads us to the conclusion that there was evidence of probative value to sustain the findings and conclusions which the Board reached. There was a conflict in the evidence, but this conflict was weighed by the Board, which determined the issue adversely to the appellant. It is the general rule that the decision of the Board as to all questions of fact is conclusive and binding upon the court unless reasonable men would be bound to reach a different conclusion on the evidence, *Adams et al.* v. *Rev. Bd. Ind. Emp. Sec. Div. et al.* (1957), 237 Ind. 63, 143 N. E. 2d 564, and this court will not weigh the evidence. *Youngstown S. & T. Co.* v. *Rev. Bd., E.S.D.* (1954), 124 Ind. App. 273, 116 N. E. 2d 650. Under the factual situation as thus presented to us in this particular case, we cannot say as a matter of law that the decision of the Board was erroneous. Such decision is therefore affirmed.

Kelley, P. J., and Ax, Bierly, Cooper, Myers and Pfaff, JJ., concur.

Gonas, J., not participating.

NOTE.—Reported in 178 N. E. 2d 557.