CHRYSLER CORPORATION *v.* REVIEW BOARD
OF INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 19,719. Filed September 21, 1962.]

*Robert J. Kinsey,* and *Ellis & Kinsey,* of Kokomo, for appellant.

*Edwin K. Steers,* Attorney General, and *Keith Campbell,* Deputy Attorney General, for appellee, Review Board.

PFAFF, J.—On November 30, 1960, appellant Chrysler Corporation filed its "Eligibility Information Report" with the Indiana Employment Security Division stating that the appellee Eugene D. Shutt had been discharged for misconduct involving an infraction of its garnishment rule. On January 13, 1961, appellee Shutt filed his "Application for Unemployment Benefits." On January 25, 1961, the Kokomo office of the Indiana Employment Security Division determined that appellee had been discharged because of his failure to be governed by his employer's garnishment rules and that such discharge was for

misconduct in connection with his work thereby disqualifying him from benefits under the Indiana Employment Security Act.

Appellee thereafter filed with the Division his "Request for a Hearing Before a Referee of the Division," alleging that he was entitled to benefits because the garnishment resulting in his discharge had been filed in error.

Appellant filed its "Statement of Respondent's Contention," alleging that appellee had been warned on September 29, 1959, that by a rule of the employer any future garnishments against appellee's wages would result in his discharge; that appellant thereafter was served with notices of a garnishment hearing on March 8, 1960; that appellee was advised to take care of the indebtedness; but that on November 28, 1960, an order of garnishment was served on appellant against appellee's wages, and appellee was discharged from his employment.

On March 28, 1961, the Referee issued his decision that the local deputy's determination that appellee was not entitled to unemployment benefits should be set aside, and that the appellee's discharge was not for misconduct in connection with his work.

Appellant duly filed its request with the appellee Review Board of the Indiana Employment Security Division for a review of the Referee's decision and on July 31, 1961, the Review Board entered its decision which reads as follows:

"*FINDINGS AND CONCLUSIONS:* Granted that the garnishment of wages is a serious nuisance to employers, and burdens them with the expense and distraction of extra bookkeeping, not to mention the serious legal responsibility of complying with the court orders, nevertheless, the garnishment of wages is a civil proceeding that

does not in itself impute turpitude to the defendant. Any ordinarily good citizen may incur a garnishment, if he cannot meet his bills. To involve one's employer as a garnishee is not, ipso facto, immoral conduct. Ordinarily, it is only the legal consequence of a commercial transaction. But in aggravated cases, where it is obvious that the defendant has unconscionably or recklessly defaulted on his debts, in disregard of the employer's warnings and without even attempting to save the employer from further involvement, it is not unreasonable that the misconduct discharge provision of the Indiana Employment Security Act should be broadly enough construed to cover such a situation.

"The referee's findings and conclusions are supported by substantial evidence. The Board likewise finds that the claimant was discharged on March 28, 1961, but not for misconduct in connection with his work within the meaning of the Act.

"*DECISION:* The referee's decision issued in his Case No. 61-A-206, on March 29, 1961, is hereby affirmed, this 31st day of July, 1961."

Appellee in his brief concedes that there is no factual controversy in this case. These facts as stated in appellant's brief are as follows: The appellee, Eugene D. Shutt, had been in the employ of appellant since August 13, 1938. On September 24, 1959, the employee had two garnishments against his wages from Chrysler Corporation. On that day he was called to the office of the appellant's Employment Manager and advised that the company had established a new garnishment rule. The appellee signed a paper that he had been advised of the rule, and that if the company received any further court order of garnishment, he would be discharged.

On January 4, 1960, however, appellant received two notices of hearing for garnishment of appellee's wages. On March 8, 1960, a court order was served

on appellant for garnishment of the employee's wages. By reason of an error in the order, the garnishment order was returned to court, and the employee was not discharged. The employee was told to take care of the account.

On November 28, 1960, another court order on the same judgment was served on appellant for garnishment of the employee's wages. Appellant's Employment Manager conferred by telephone with the Justice of Peace and the attorney for plaintiff holding the judgment and was advised that appellee had ceased making agreed payments to the Justice of Peace Court, and that the order of garnishment would not be rescinded. The employee was, accordingly, discharged for violating the company rule concerning garnishments.

The employee testified that after the court order for garnishment of his wages was served on appellant on March 8, 1960, he presented himself to the Justice of Peace and agreed to make weekly payments of $5.00, and that he told the Justice of Peace to notify him if any further orders were to be sent to his employer. The employee made payments to the Justice of Peace until August, 1960, at which time he ceased making payments because he "had a lot of other little bills to catch up. . . . "

Appellee testified that he stopped making payments to the Justice of Peace for the reason that he was laid off by appellant during an inventory period in 1960. He further testified, however, that the inventory lay-off lasted for only a period from July 27 to August 3, 1960. Employer's Exhibit No. 1, which was undisputed by appellee, proved that the employee lost only eleven working hours due to inventory in 1960.

Appellee's testimony revealed that he was earning $2.65 per hour in his employment, and that his weekly pay was from $70.00 to $84.00 after deductions had been made.

The precise question of whether or not a violation of an employer's rule providing for discharge of an employee whose wages have been garnisheed is "misconduct" under the "Employment Security Act" has not been passed upon by this court or our Supreme Court. However, this court has frequently been called upon to determine what constitutes "misconduct" within the meaning of the Act.

In *Tyler* v. *Review Bd., Ind. Emp. Sec. Div. et al.* (1956), 126 Ind. App. 223, 132 N. E. 2d 154, it is stated:

> "The properly substantiated act or conduct of the employee may, in one case, show a wanton or willful disregard of the employer's interest, *and in another case a deliberate violation of the employer's rules,* while in yet another case, a wrongful intent; and the evidence in a particular case may be such as to show, as frequently appears, acts or conduct encompassing several or all of the noted infractions evidencing 'misconduct' within the meaning of the unemployment compensation acts. (Emphasis added.)" See also *Merkle* v. *Review Bd. of Ind. Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524; *Massengale* v. *Review Bd., Ind. Emp. Sec. Div.* (1950), 120 Ind. App. 604, 94 N. E. 2d 673.

The purpose of the Indiana Employment Security Act is declared as follows:

> "As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance

of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this measure *to provide for payment of benefits to persons unemployed through no fault of their own,* to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state." (Our emphasis.) Acts 1947, ch. 208, §101; §52-1525, Burns' 1951 Replacement.

The record before us in this case conclusively established that appellee Shutt deliberately violated appellant's rule. It is not contended that the rule was arbitrary or capricious. The findings of the Board recognize that garnishment of wages "is a serious nuisance to employers and burdens them with expense and distraction of extra bookkeeping, not to mention serious legal responsibility of complying with court orders."

It is admitted that the employee was fully aware of the rule. He was, in addition, informed that an order had been served upon his employer. At the time the order was served upon the employer, the employee was given a reprieve from discharge and warned that a particular creditor had sought to garnishee his wages. The only steps appellee then took to prevent further violation of the rule was to enter into an informal payment arrangement with the Justice of Peace. There is no evidence that he contacted the creditor or his attorney or employed counsel to secure a rescission of the garnishment order. The employee ceased making payments on the

judgment, however, and as a result the order was served on appellant. The employee's acts as shown by the undisputed evidence herein leads irresistibly to the conclusion that he knowingly and deliberately violated appellant's established rule.

We recognize that no hard and fast rule can be fixed defining in precise terms what constitutes such misconduct as to deny an employee the benefits of this Act and that each case must be determined upon the particular facts thereof. As indicated by the authorities cited herein only general principles can be enunciated for the guidance of the Board.

It may be appropriate to here observe that as a guide to the "interpretation and application" of the Act it is provided in its Declaration of Public Policy (§52-1525, Burns' 1951 Replacement) that the enactment of the measure to provide for payment of benefits to "persons unemployed through no fault of their own," etc., is essential to the public welfare and a proper exercise of the police powers of the state. Thus, it would seem that the basic and fundamental inquiry in all cases must be of the facts and circumstances by reason of which the unemployed person seeking the benefits provided by the Act became so unemployed. In the case at hand the record evidence leads inescapably to the conclusion that the herein claimant became unemployed as a result of his own fault. Notwithstanding the liberal opportunities afforded him to arrange his financial obligations so as to avoid the service on his employer of judicial process in connection with proceedings supplemental against his wages, claimant consistently failed to honor his agreements for the periodic liquidation of his indebtedness. This action on his part

resulted in the continued service on his employer of the said judicial process, in defiance of and violation of the stated rule upon which his continued employment was conditioned. Under these circumstances, a grant of unemployment benefits to the herein claimant would be not only in contravention of the announced purposes of the Act but would be also tantamount to a declaration against the right of an employer to establish and maintain fair and reasonable rules and regulations for the conduct of its business and the welfare of its employees. It must be emphasized that we reach our conclusion solely upon the facts of this particular case as the same are made manifest by the record before us.

On the uncontroverted facts in this case we are of the opinion that appellee became unemployed through his own fault and therefore has deprived himself of the unemployment benefits provided by this Act.

Award of the Review Board of the Indiana Employment Security Division is reversed.

Kelley, C. J., and Bierly, J., concur.

Gonas, J., dissents with opinion.

### DISSENTING OPINION

GONAS, J.—I do not agree with my colleagues in this cause.

It was not the intent of the legislature to give an employer a right to discharge an employee simply due to a garnishment proceeding when they enacted the garnishment law. The legislature did not intend to penalize a person because of his misfortunes.

Our laws regard as imposing an obligation upon the employer to:

" . . . establish certain reasonable rules in order to control excessive processing of garnishments allowed under the present method of collection of bills through the Justice of the Peace system. Section 2-4404 of the Indiana Labor Laws covering Garnishment of Wages, required an employer when ordered by the court, to garnishee the wages of an employee. It is logical then to assume that the employer must establish reasonable rules to keep this process to a minimum."

The facts upon which this controversy depends are few and substantially undisputed.

There is no showing in the record in this case that the institution of garnishment proceedings in any way was a wanton or willful act disregarding the employer's interest. The only evidence is to the effect that appellee violated the company rule against garnishment. There is no showing that the violation of this company rule, although it may be proper grounds for discharge, comes within §1501 of the Act to show that said violation of the company garnishment rule was misconduct in connection with the appellee-claimant's work. In *Mandella* v. *Mariano*, 61 R. I. 163, 200 A. 478, 479, "misconduct" is described as follows:

"A transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior; its synonyms are misdemeanor, misdeed, misbehavior, delinquency, impropriety, mismanagement, offense, but *not negligence* or *carelessness*." (My emphasis.)

The fact that the institution of the garnishment proceedings caused additional work on the part of the appellant-employer is not in itself an act of misconduct. The law provides many instances in which additional work is caused the employer, but this fact

alone is not a sufficient reason for the employer's not complying with the law. To illustrate, the employer must file reports and pay quarterly contributions under the Indiana Employment Security Act. Likewise, the employer is required under the law of the State of Indiana to deduct gross income tax from the employees' wages. Likewise, the employer deducts Social Security payments from the employees' wages. All of these instances require additional work on the part of the employer and his personnel, but said additional work in itself is not sufficient reason for the employer to ignore the laws of the State of Indiana and the United States.

I am supported by the weight of authorities as found in Words and Phrases, "Misconduct" Vol. 27 p. 474.

> "Harassment of employee by his creditors, which resulted in his discharge, was not 'misconduct' precluding recovery of employment security benefits. *Jackson* v. *Administrator of Division of Employment Sec. of Dept. of Labor,* La. App., 128 So. 2d 915, 918.
>
> Employee whose wages are garnished and who is discharged from employment because of rule relating thereto is not, as matter of law, guilty of 'misconduct' connected with employment disqualifying her from unemployment compensation benefits. *Robinson* v. *Brown,* La. App., 129 So. 2d 45, 47.
>
> Where garnishment of employee's wages, resulting in her discharge because of employer's rule relating thereto, resulted because of inability to pay creditor because of husband's lack of earnings, discharge was not result of 'misconduct' connected with employment which would disqualify her from unemployment compensation benefits. *Robinson* v. *Brown,* La. App., 129 So. 2d 45, 47.
>
> Generally, a single instance of negligence or mistake is not sufficient evidence of 'misconduct,'

so as to require denial of unemployment compensation to employee discharged therefor. *Boynton Cab Co.* v. *Neubeck,* 296 N. W. 636, 641, 237 Wis. 249."

The decision of the Review Board of the Indiana Employment Security Division should be affirmed.

NOTE.—Reported in 185 N. E. 2d 25.