YOUNGSTOWN SHEET & TUBE COMPANY *v*. REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[Nos. 19,723, 19,752 and 19,753. Filed June 4, 1963. Rehearing denied June 26, 1963. Transfer denied December 11, 1963.]

462

*George P. Ryan, Leland B. Cross, Jr., Alan T. Nolan,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Keith Campbell,* Deputy Attorney General, for appellee, Review Board.

KELLEY, J.—This review of the decision of the Review Board of the Indiana Employment Security Division (hereinafter referred to as Review Board or Board) is a consolidation of three separate perfected appeals for review filed herein by appellant from three separate decisions by said Board with relation to the eligibility for unemployment benefits of three claimants.

It appears that the three claimants, namely, John T. Bonic, Robert L. Grant and Jessie W. Williams, were employees of appellant. The latter and the United Steelworkers of America, a union in which said employees held membership, were parties to a collective bargaining agreement. Upon the stated ground of necessary reduction "in force", said Bonic, an apprentice welder, was laid off by appellant on November 22, 1960, said Grant, as boilermaker's helper, was laid off by appellant on November 26, 1960 and said Williams, an apprentice boilermaker, was laid off by appellant on November 23, 1960.

Each of said employees made application for and were determined to be entitled to unemployment compensation. No petition for the review of such determination was ever made and said claimants received unemployment benefits continuously from the time they were laid off until about January 21, 1961.

On January 4th and 5th, 1961, some 45 men, former active employees of appellant but who, on said dates, were occupying a layoff status, "went from one to another of the three entrances to the appellant's plant picketing and demonstrating against the layoff they had suffered." The said Bonic, Grant and Williams par-

icipated in said picketing and demonstration and, during the time thereof, were receiving unemployment benefits. The said picketing and demonstrating by said men was not authorized or countenanced by said union.

Said claimant appellees on said January 4th and 5th, 1961, respectively, engaged in various personal, and in some cases offensive, acts around and in the vicinity of the gates and entrances and preventing employees from coming to work, taking an employee by the arm, yelling uncomplimentary epithets and standing in an eighteen-man shoulder-to-shoulder picket line across the steps of appellant's dock house.

On January 16, 1961, said Grant and Williams were recalled to work by appellant. On January 23, 1961 said Bonic was "discharged" by appellant for "his participation in the strike." On January 24, 1961 said Grant was "discharged" by appellant "for his participation in the work stoppage and strike of January 4 and 5, 1961." On January 23, 1961 said Williams was given "a disciplinary suspension for five days" and following a "company union" hearing on January 27, 1961, he was "discharged" by appellant "for his participation in the work stoppage and strike of January 4 and 5, 1961," effective as of January 24, 1961.

On or about February 10, 1961 the appellant filed "Information Reports" with the local office of the Board, stating in each of the said reports that the claimant was "Discharged for Cause—Activities with work stoppage." Appellant was advised in each case by the local office deputy that in his opinion the claimants were not discharged by appellant for "misconduct in connection with his work." An appeal by appellant to the referee resulted in a decision that the respective claimants were not disqualified and were entitled to benefit rights. On petition for review, the Board af-

firmed, with minor modifications, the decision of the referee.

Although the agreement provision is not shown in the appellant's original brief, there are indications and implications in the briefs that by the terms of the said collective bargaining agreement the claimant appellees retained "seniority rights" and rights of recall at such time *as the appellant found itself in position so to do.*

In general pertinent effect the Board found, by adoption of the referee's decision, that:

"While it is true that the claimant continued to enjoy certain rights and privileges under the labor-management contract at the time of his lay-off, nevertheless, at the time of the commission of the act of misconduct, the claimant was rendering no personal services to the employer, nor was the employer paying any remuneration to the claimant. The employer had no right of control over the claimant, and the claimant had no claim against the employer. The union contract merely preserved claimant's seniority rights and rights of recall until such time as the employer was in a position to re-employ the claimant. So far as the Indiana Employment Security Act is concerned, the employer-employe (*sic*) relationship, and the contract of employment, came to an end at the time the claimant was indefinitely laid off by the employer. No further duty was owed each to the other. Further, the claimant, under the provisions of the Employment Security Act, made claim for compensation and the Division made a written determination of claimant's right to draw benefits under the Act. This act of the Division, which was not appealed, determined finally the reason for separation by claimant from his employment and established finally the claimant's right to benefits. Until such time as the employer-employe (*sic*) relationship again came into existence by re-employment, the claimant's status under the Act remained the same and could not be altered . . . that it was impossible for the claimant to have committed any act of misconduct while in a laid

off status and while he was performing no services for his former employer, and while the former employer was paying no remuneration to the claimant, which would entitle the employer to legally discharge the claimant and terminate benefit rights that had already been established by the Division."

The Indiana Employment Security Act by §1501 thereof, being §52-1539, Burns' 1951 Replacement, and §52-1539, 1962 Cum. Pk. Supp., provides, in part and *inter alia*, that:

"An individual shall be ineligible for waiting period or benefit rights: For the week in which he . . . has been discharged for misconduct in connection with his work, . . . ."

Appellant contends that the decision of the Board is contrary to law in that "The three restrictive standards added to §1501 by the Review Board herein, i.e., that an employee be

subject to the actual or contractual control of his employer, rendering service and receiving pay,

in order for his misconduct to be in connection with his work are plainly unauthorized by the Act." Appellant further says: "it would seem apparent that an individual who joins with others on his employer's premises and attempts by means of picketing and force to cause his premature return to his job with said employer is plainly involved in misconduct which is *in connection with his work.*"

Appellees counter by asserting that "When each of the claimant appellees applied for unemployment compensation they had each been laid off work by their former employer, the appellant herein. At the time each of said claimant appellees applied at the respective lo-

cal offices . . . for unemployment benefits, each . . . was required to and did establish under the . . . Security Act that he was unemployed through no fault of his own and was physically and mentally able to work and also available for work. . . . Further, each of said claimant appellees was required to and did . . . register for work at the . . . offices of the . . . Security Division. . . . Each of the claimant appellees was properly determined to be entitled to unemployment benefits and started drawing benefits . . . commencing November 12, 1960, without objection from appellant . . . until February 8, 1961. . . . as found and determined each of said claimant appellees was in the labor market seeking employment . . . . . . . each of said claimant appellees was entitled to employment security benefits until . . . his employment security benefits were exhausted or until each . . . was called back to work with the appellant . . . or with other employer that might provide them employment."

The above mentioned collective bargaining agreement between appellant and the United Steelworkers, in which appellees held membership, provides, as appears from appellant's brief, that:

"There shall be no strikes, work stoppages, or interruption or impeding of work . . . . *No employee* shall participate in any such activities." (Emphasis supplied).

On January 4th and 5th, 1961, the appellee claimants were in lay off status pursuant to appellant's action in laying them off in November, 1960, and on said dates were not employees of appellant within the self-evident meaning of said provision of said agreement. On said dates said appellees could not have participated as employees of appellant in any of the activities mentioned in said provision of the contract be-

cause they were not then occupying an employee relationship with appellant. To hold to the contrary would, in effect result in a concomitant holding that the award of unemployment benefits to appellees by the local office may be subject to enquiry and the acceptance of such benefits by appellees may be in violation of §52-1559, Burns' 1962 Cum. Suppl.

There appears nothing in said provision of said collective bargaining agreement or in the use of the word "employee" therein which requires, or which indicates, that said quoted word be attributed a special or technical definition or be ascribed a meaning inconsonant with the common, well-established meaning thereof. Although stated with reference to a different subject matter, we deem the following quotation from *Koch, Executor, et al.* v. *Wix et al.* (1940), 108 Ind. App. 20, on page 26, 25 N. E. 2d 277, to be apropos to adequately express such well-established meaning:

> "The word here used (employes) has a definite, well-established meaning, commonly known, and is applicable only to one who is *in the present service* of another *for pay* at *a particular time*. In its accepted usage, it does not embrace one who has at some time been *but no longer is,* in the employment of another." (Emphasis supplied).

As noted above, the appellant, in its "Information Reports" to the local office, stated that the appellee claimants were "Discharged for Cause—Activities with work stoppage." That was the "misconduct in connection with his work" (§52-1539, Burns' 1962 Cum. Suppl.) charged by appellant against each of said appellee claimants, and such charge, it is apparent, followed the prohibited activity by an "employee" provided for in the above quoted provision of the collective bargaining agreement. In final analysis,

the misconduct sought to be charged against appellee claimants by appellant was that they breached said quoted provision of the bargaining agreement in that they engaged in a strike and work stoppage which they had agreed not to do.

Appellant directs argument to this point on the ground that said appellees' participation "in an illegal strike" would seem to be a "wanton or unlawful disregard for the employer's interests." However, the basic validity and conclusion of appellant's tendered proposal is without foundation unless it be predicated on the premise that said appellees were "employees" of appellant at the time of the alleged breach of the contract, since said provision of the agreement is, by its terms, a prohibition of certain designated activities by an "employee." We have already determined that the appellee claimants did not stand in an employee relationship with appellant at the time of the claimed misconduct by them. Thus it seems clearly to follow that their acknowledged activities, although perhaps unwise and in some respects an invitation to legal entanglements, did not constitute any breach by them of the relied upon agreement. Consequently, in our opinion, the appellee claimants were not and could not be guilty of "misconduct" in connection with his (their) work" in the respect asserted by appellant.

It is the further contention of appellant that said appellees "were employees with seniority rights" under the bargaining agreement and that they "retained employee status and were entitled as a matter of law under this agreement to return to work with appellant at a future date." We have previously adverted to the absence in appellant's brief of the provisions or parts of said bargaining agreement relied upon by appellant in this contention. We are thus deprived of measuring

the actual wording of any such provisions with the contention now projected. Said statement of appellant is a self-serving conclusion unsupported by appropriate citation to and incorporation of the pertinent sustaining evidence. For example, in the absence of a proper showing by appellant, how may we determine or satisfy ourselves as to the correctness of the latter's declaration that the appellee claimants "were entitled *as a matter of law* . . . to return to work with appellant at a future date." The Board found, as shown by the above quoted finding thereof, that

> "The union contract merely preserved claimants seniority rights and rights of recall until such time as the employer was in a position to re-employ the claimant. So far as the Indiana Employment Security Act is concerned, the employer-employee (sic) relationship, and the contract of employment, came to an end at the time the claimant was indefinitely laid off by the employer."

Under the circumstances we most recently made reference to, we must hold that appellant has not demonstrated or established that the next above quoted finding of the Board is erroneous or that there is no evidence to support the same.

It has long been the general rule in this state that the decision of the Board on questions of fact, where there is evidence to support the same, is conclusive and binding upon the reviewing court and that the decision of the Board will not be disturbed "unless reasonable men would be bound to reach a different conclusion on the evidence" in the record. *VanBenthuysen* v. *Review Board of the Indiana Employment Security Division et al.* (1958), 128 Ind. App. 274, 277, 147 N. E. 2d 910; *Massengale* v. *Review Board of Indiana Employment Security Divi-*

*sion et al.* (1961), 132 Ind. App. 587, 593, 178 N. E. 2d 557. In our opinion, appellant has failed to establish that the findings of the Board do not rest upon a substantial factual foundation or that the decision of the Board is erroneous as a matter of law. Under the facts made apparent by the record evidence in this particular case, we would be unwarranted, we think, in determining that reasonable men would be bound to reach a conclusion different from that arrived at by the Board.

The decision of the Board herein appealed from is affirmed.

Mote, C. J., Carson, P. J., and Clements, Cooper, Pfaff and Ryan, JJ., concur; Hunter, J., dissents with opinion to follow.

## DISSENTING OPINION.

HUNTER, J.—I respectfully dissent from the majority opinion not only because I feel that the characterization of a laid-off person as being no longer an employee is legally wrong, but also because I fear that the opinion has opened the door for divers adverse consequences.

In order to more readily understand the fact situation the referee's findings of fact which were accepted by a majority of the Review Board are set out in this dissent, for as stated by Judge Kelley in the majority opinion, we are bound to accept such fact situation for the purposes of this appeal.

Portions of those findings which in my view present the serious questions here are as follows:

The referee found that in November, 1960 the employee claimants were

" . . . laid off by the employer for an indefinite period of time due to a reduction in force.
The referee further finds that the employes of the abovementioned employer were represented by a

bargaining agent, the United Steelworkers of America, which said bargaining agent, prior to January 4, 1961, had negotiated a contract covering wages and working conditions with the employer, which said contract was in full force and effect on that date.

The referee further finds that under the terms of said contract, said union, representing the employes, agreed *that during the existence of the contract there would be no strikes, work stoppages, or interruption of work.* It further provided that *no employe should participate in any such activities.*

The referee further finds that *immediately prior to the 4th day of January, 1961, a labor dispute arose between said employes and the company in reference to the method of laying off employes, although the record indicates that the employer was violating no provisions of the contract in the method employed by the employer in laying off certain employes.*

*The referee further finds that on the 4th day of January, 1961, approximately forty-five (45) employes established picket lines in front of the entrance to one of the employer's plants, and actively and physically prevented employes from entering the plant during that day and during a portion of the following day; that claimant was one of the employes involved in this activity.*

The referee further finds that the United Steelworkers of America did not instigate, participate in, or encourage the picketing activities and, in fact, exerted its efforts to bring such activities to a halt and urged men to return to their jobs.

The referee further finds that the employer disciplined all employes involved and discharged the claimant on the 23rd day of January, 1961, solely and as a direct result of claimant's participation in the unauthorized strike.

The action of the forty-five (45) employes was not a "strike", "walkout", or "labor dispute", as those terms are commonly used, for the reason that such activity was neither authorized, condoned or en-

couraged by the bargaining agent of the employes.
*In fact, claimant's activity was an open and direct
breach of the labor-management contract, by which
claimant and all others were bound, and was ac-
complished in open defiance to the terms of the con-
tract and to the wishes of claimant's own union.
Further, all employes of The Youngstown Sheet
and Tube Company had been warned by letter on
October 27, 1960, of the consequences of participa-
tion by employees in work stoppages.*

*We are of the opinion that it was impossible for
the claimant to have committed any act of mis-
conduct while in a laid off status and while he was
performing no services for his former employer,
and while the former employer was paying no re-
muneration to the claimant, which would entitle
the employer to legally discharge the claimant and
terminate benefit rights that had already been es-
tablished by the Division. . . .*" (my emphasis).

The appellees in defiance of both their employer, The
Youngstown Sheet & Tube Company, and their union,
the United Steelworkers of America, participated in
unauthorized picketing of the plants. The ironical part
of the referee's findings, the board's order and the
majority opinion of affirmance is that the employees
were thus permitted to picket the plant in an attempt
to force their employer to grant them rights which they
claimed under the collective bargaining agreement even
though their layoff was occasioned by a reduction in
force and in compliance with seniority rights under the
agreement.

They now come forward and deny they were em-
ployees even though it is readily apparent that at the
time of their picketing they recognized and claimed
their status in the employer-employee relationship un-
der the collective bargaining agreement, i.e., by attempt-
ing to force their premature recall to the job in viola-

tion of the contract. It seems intuitively obvious that the referee's decision as affirmed by the board and majority opinion of this court have contravened logic and justice by allowing a laid-off employee to openly defy his employer in an "illegal" and "wildcat" labor dispute knowing that the employer has no choice but to fulfill the contractual obligations owed to the employee at his (the employee's) option regardless of the scope, time and extent of the employee's misconduct, and yet still be eligible for unemployment benefits notwithstanding his discharge for such subsequent "misconducts".

The law seems to be well settled that an employee who breaks his employment contract and is discharged therefor is ineligible for unemployment compensation benefits. *Tyler* v. *Review Bd., Ind. Emp. Sec. Div. et al.* (1956), 126 Ind. App. 223, 132 N. E. 2d 154; *Chrysler Corporation* v. *Review Board of the Ind. Emp. Sec. Div.* (1962), 134 Ind. App. 1, 185 N. E. 2d 25. Therefore it seems illogical to me to arrive at an opposite conclusion as in the majority opinion under a more grievous factual situation by reason only of the fact of employee's laid off status. The employer here was subjected to more far-reaching adverse consequences by the illegal and unauthorized activity of the appellees than by the mere infraction of company rules as was the fact in the above cited cases.

It would seem apparent that an individual's actions in joining with others on his employer's premises and attempting by means of illegal picketing and force, in direct violation of the collective bargaining agreement, to effectuate his premature recall to his job, which purpose if accomplished would amount to a further violation of the contract, should be construed to be *"misconduct in connection with his work"* within the meaning of

the statute sufficient to disqualify the claimant from unemployment compensation benefits.[1]

Here the appellees in my opinion were still in a contractual relationship with the appellant at the time of their illegal activity and admitted as much by (1) the purpose of their illegal picketing and (2) by subsequently returning to work under their seniority rights legally guaranteed by the collective bargaining agreement.

However, the majority in upholding the Review Board's order has held as a matter of law that there must be (1) actual or contractual control by the employer (2) the employee must be performing services for his employer and (3) receiving pay for the work performed, and that there must be a concurrence of all of the above facts with "misconduct" in point of time. It seems apparent that the Board of Review in its findings and order have, in reaching such a conclusion,

---

1. The language in the case and text citations below would indicate that the illegal activities referred to in above dissent amount to misconduct. They are not on point factually in all respects. They do indicate however that misconduct in connection with work should not be too narrowly limited by 'pigeon holing' of fact situations because to do so would be to lay down precedents that admit of no flexibility and would tend to preclude informed judgments with varying fact situations. Burns' Annotated Statutes 1951 Repl. Sec. 52-1539 1962 Cum. Supp.; *Massengale* v. *Review Board of Indiana Employment Security Division* (1950), 120 Ind. App. 604, 608, 94 N. E. 2d 673, 675; *Merkle* v. *Review Board of Indiana Employment Security Division* (1950), 120 Ind. App. 608, 90 N. E. 2d 524, 525; *Progress Manufacturing Company, Inc.* (1961), 195 Pa. Super. 110, 169 A. 2d 567, 569; *H. J. Heinz Co.* v. *Unemployment Compensation Board of Review* (1953), 172 Pa. Super. 324, 94 A. 2d 82, 84; *Bogue Electric Co.* v. *Board of Review of the Division of Employment Security of the Dept. of Labor and Industry et al.* (1956), 21 N. J. 431, 122 A. 2d 615, 618; *Employment Security Board of Maryland* v. *Lecates* (1958), 218 Md. 202, 145 A. 2d 840, 845; *Boynton Cab Co.* v. *Neubeck* (1941), 237 Wis. 249, 296 N. W. 636; 48 Am. Jur., Social Security, Unemployment Insurance, etc., Section # 38; 81 C. J. S., Social Security etc., Section # 162; 8 Vanderbilt Law Review (1954-1955), p. 207 and 336, 337; *American Bag & Paper Co.* v. *Unemployment Compensation Board of Review* (1957), 184 Pa. Super. 292, 132 A. 2d 765.

written conditions in the statute that were not written there by the legislature and further in adopting such conditions have literally destroyed any legal significance of the phrase "misconduct in connection with his work" except in concurrence with the above three conditions.

Nowhere in Section 1501 of the Act, Burns' Ind. Statutes (1951 Repl., 1959 Supp., Section 52-1539) does the legislature say that the Board's announced conditions above must be in concurrence with such misconduct and with as much immediacy as is indicated by the board. It would seem conclusive that if the Indiana General Assembly intended such conditions, they would have been set forth in the Act. The appellant asserts with appropriate reasoning that if such had been the intention of the legislature it could have very adequately supplied such limiting language and narrowed the disqualifying provisions, however, it chose to use the very broad language of "in connection with his work" as a disqualifying factor. The board by its decision has almost conclusively limited the disqualifying "misconduct" to occurrences while on shift or at the most between shifts and again it is reiterated that if the legislature had so intended it could have stated so specifically in the Act itself which to the moment it has not seen fit to do.

The National Labor Relations Board has carefully and significantly refrained from creating such illogical situations by consistently holding in their cases that a laid-off worker remains in the status of an employee with his employer. *Paragon Rubber Co.* (1938), 6 N.L.R.B. 23; *Unit Cast Corp.* (1938), 7 N.L.R.B. 129; *American Cyanamid Co.* (1940), 19 *N.L.R.B.* 1026; *Sangamo Electric Co.* (1954), 110 N.L.R.B. 1; *Aroostook Federation of Farmers, Inc.* (1957), 117 N.L.R.B. 31; *General Motors Corp.* (1955), 113 N.L.R.B. 876.

I feel that this is the only result that can lead to a semblance of logical continuity in this area of law.

In concluding it should be noted that the appellee, Board of Review, states in its brief that the claimant appellees were the type of persons for which the Indiana Employment Security Act was enacted, i.e., for persons *laid off* due to lack of work and that the declared public policy of the Act was for just this type of protection against the great hazards of our economic life because they were *laid off through no fault of their own*. This is true except that it goes only half way along the road of the fact situation in this case. It goes only to the laid off period and if this were all the further the fact situation progressed I would agree. But the order has gone further and now says that having been recalled pursuant to their rights under the union-company collective bargaining agreement and subsequently discharged as a result of concordance reached at a conference of the claimants' union representatives and the employer company for illegal acts committed during the *laid off* period they must now be permitted to receive unemployment compensation benefits. It seems obvious that but for their *"misconduct"* during *"lay off"* they would still be employed and this being true their *"misconduct"* could logically be construed to be *"in connection with (their) work"* therefore it should necessarily follow that their employment was terminated *"through their own fault"* and hence they are not the type of persons referred to in the public policy of the Act and should be declared ineligible for benefits.

Therefore it seems that to hold otherwise and affirm the Board's findings and order is to say in practical effect "you may have your cake and eat it too." While lamentable as it may be that this philosophy may be

socially too acceptable in our time it should not, in my opinion, be approved as a matter of law.

I respectfully suggest the Board's order should be reversed.

### ON PETITION FOR REHEARING

KELLEY, J.—Appellant, in its petition for rehearing, says that our opinion in this appeal is in conflict with our holding in *Chrysler Corporation* v. *Review Board, etc.,* (1962), 134 Ind. App. 1, 185 N. E. 2d 25, because, appellant asserts, our said opinion in the instant case "concedes at pages 2 and 3 . . . that the appellees were unemployed through their own fault . . . ." A rereading of our said opinion fails to disclose to us any such concession.

Appellant further alleges that we were in error in holding that the appellees "were not employees of appellant within the self-evident meaning of said provision of said agreement" and cites us to the collective bargaining agreement "set out verbatim *in appellant's Reply Brief.*" (Our emphasis). We stated in our opinion that said agreement was not set forth in appellant's original brief. Appellant's experienced counsel are aware, we are sure, that the reply brief cannot supply the omissions of the original brief. If not, we direct attention to: *Macbeth Evans Glass Company* v. *Jones* (1911), 176 Ind. 221, 223, 224, 95 N. E. 567; *Rudolph* v. *Ayde* (1925), 84 Ind. App. 202, 204, points 2-4, 149 N. E. 734; *White et al.* v. *Sheetz* (1896), 17 Ind. App. 699, 700, 45 N. E. 673; Works' Ind. Practice, Lowe's Rev., Vol. 4, §§70, 89, note 3, page 692.

Petition for rehearing is denied.

Mote, C. J., Carson, P. J., and Cooper, Pfaff and Ryan, JJ., concur; Clements and Hunter, JJ., dissent.

NOTE.—Reported in 191 N. E. 2d 32. Rehearing denied in 191 N. E. 2d 524.