MASSENGALE *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 18,035. Filed November 1, 1950.]

Bowen, Martin and Wiltrout, J. J., dissent.

*John M. Caylor,* of Indianapolis, for appellant.

*Henry M. Hogan,* of Detroit, Michigan; *Alan W. Boyd, Lester Irons, John W. Houghton;* and *Barnes, Hickam, Pantzer & Boyd* (of counsel), all of Indianapolis; *J. Emmett McManamon,* Attorney General, and *Glen F. Kline,* Chief Counsel, Employment Security Division, for appellees.

CRUMPACKER, J.—The appellant was employed by the Allison Division of General Motors Corporation on January 17, 1949, as a clerk in its Materials and Control Department. On November 10, 1949, he was discharged and in due course he filed a claim for compensation pursuant to the Indiana Employment Security Act. Allison, as his former employer, thereupon filed with the Employment Security Division a "report of unemployment" on the basis of which the claims deputy concluded the appellant had been discharged for misconduct in connection with his work and denied relief as provided by Burns' 1933 (1949 Supp.), § 52-1539, which reads as follows: "An individual shall be ineligible for waiting period or benefit rights: For the week in which he has left his work voluntarily without good cause or has been discharged for misconduct in connection with his work, and for the five (5) next fol-

lowing weeks, in addition to the waiting period; . . ." The matter eventually found its way to the Review Board of the Indiana Employment Security Division which, after a hearing on January 13, 1950, entered the following finding and decision:

> "Findings and Conclusions: The Review Board finds that the claimant was discharged for misconduct in connection with his work on November 10, 1949. His attitude and actions toward his superior constituted insubordination on his part and clearly indicates that he had a total disregard of his employer's rights and interests, which constitutes misconduct in connection with his work.
>
> "Decision: The Review Board hereby affirms the decision of the Referee and holds that the claimant was discharged for misconduct in connection with his work on November 10, 1949, and the statutory penalty is imposed."

This appeal challenges the sufficiency of the evidence to sustain the finding that the appellant was guilty of misconduct "in connection with his work" as that term is used in the statute above set out and under which the board seeks to justify its decision.

The facts are not in dispute in essential detail and indicate that the appellant was employed by the appellee Allison Division of General Motors Corporation from January 17 to November 10, 1949, when he was discharged. During such period his duties were those of a posting clerk in the Materials and Control Department where there were three other men similarly employed. When he was first hired he was told by his immediate supervisor that after a reasonable time he would be given consideration for a salary increase but after six months of satisfactory work he received no encouragement in that respect. He also felt that his supervisor had discriminated against him in that he was not given an opportunity to work overtime al-

though his fellow employees had done so repeatedly. In his own words, "that didn't sit very well and it naturally made a dissatisfied employee." He talked with the "other boys in the office" about his inability to get overtime work and told them that someday his supervisor, when he could not get anyone else to work overtime, would ask him to do so and he would refuse, the inference being that in this manner he would hinder and inconvenience his employer, impede the work and thus avenge, to some extent, past acts of discrimination. His opportunity came on Saturday night November 8, 1949, when the supervisor "found himself in a hole" and wanted someone to work overtime. He asked the other employees on the shift to do so but each of them had previous plans or engagements and he was thus forced to rely on the appellant who likewise refused although he was desirous of overtime work and had no reason to refuse it other than his determination not to cooperate with the supervisor because of past treatment. The following Monday the supervisor called the four posting clerks together and talked to them about their duty to cooperate with the company in connection with overtime work. At that time the appellant did not know that one of his fellow employees had finally accepted the overtime assignment and thought the supervisor was talking to all of them because they "had left him in a hole on the work." When he learned that his refusal to work had not accomplished its purpose he became angry and requested a private interview with the supervisor. This developed into a heated argument during which the appellant said things that "weren't very complimentary" to the supervisor and as a result he was directed to report to the personnel department which he did two days later and was discharged.

The appellant contends that this evidence discloses nothing more than a dispute over work that he was under no obligation to perform and therefore his attitude in reference thereto could not constitute misconduct "in connection with his work." The word "work" as used in the statute, he asserts, means work which it was his contractual duty to perform. Such contention may be true of the incident precipitating the appellant's discharge but the evidence goes beyond that. To our minds it shows a deliberately conceived and long cherished design on the part of the appellant to take advantage of his employer at a time when such employer might be in sore need and thus impede the progress of its work in general. Except for his regular job this scheme could not have been brought to its supposed fruition and its conception and attempted perpetration must be considered as connected with the appellant's contractual work.

This court has said that: "The great majority of the cases on the subject under consideration sustain the rule that 'in order to constitute "misconduct" within the meaning of the unemployment compensation acts excluding employees discharged for "misconduct" from their benefits, an act must show a wanton or wilful disregard for the employer's interests, a deliberate violation of the employer's rules, or a wrongful intent.' " *Merkle* v. *Review Board of Indiana Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524. The Supreme Court of Wisconsin has defined the word "misconduct," as used in a statute similar to ours, in the following language: ". . . the term 'misconduct' . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such

degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." *Boynton Cab Co.* v. *Neubeck* (1941), 237 Wis. 249, 296 N. W. 636.

By statutory mandate we must accept the facts as found by the board and can disregard them only in the event they are not sustained by any evidence of probative value. Burns' 1933 (1949 Supp.), § 52-1542k. In our opinion the evidence is sufficient to warrant the board in concluding that the appellant, through wrongful intent and evil design, sought to precipitate a situation which would be detrimental to his employer's interest.

This was misconduct in connection with his work and the decision of the board must be sustained.

Judges Bowen, Martin and Wiltrout dissent.

NOTE.—Reported in 94 N. E. 2d 673.