TYLER *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION, ET AL., GOODYEAR ENGINEERING CORPORATION.

[No. 18,736.   Filed February 16, 1956.]

*Eugene D. Tyler,* and *George B. Hoffman,* of Hammond, and *Herbert L. Segal,* Louisville, Kentucky, for appellant.

*Edwin K. Steers,* Attorney General and *William S. McMaster,* Deputy Attorney General, for appellee, Review Board.

*James W. Stites,* of Louisville, Kentucky, for appellee, Goodyear Engineering Corp.

KELLEY, J.—Appellant, a discharged employee of the appellee, Goodyear Engineering Corporation, claimed unemployment compensation by virtue of the Indiana Employment Security Act. (Sec. 52-1501, Burns' 1951 Replacement, et seq.) The Review Board found that appellant had been discharged for misconduct in connection with her work and decided she was disqualified for her benefit rights. [See Sec. 52-1539, Burns' 1951 Replacement].

The appellant was employed by the appellee, Goodyear Engineering Corporation, at its Charlestown, Indiana, plant for two years and nine months as a power sewing machine operator. There were approximately 300 women employed in the room wherein appellant worked, most of whom were engaged in like work. The plant is heated by overhead heaters, placed about 90 feet apart and 17 feet 3 inches from the floor, and below each heater a cone about 24 inches in diameter is suspended some 16 feet above the floor so that the hot air, which is fan blown downward from the heater, strikes the cone and is thereby evenly diffused in all directions. The heaters are thermostatically controlled and "set at a level suitable to the majority."

The record is replete with evidence that during her

entire period of employment with said appellee, appellant constantly and persistently harassed the foreman, supervisor and personnel division with complaints and expressions of dissatisfaction with various matters pertaining to her work and location in performing it.

Her main subject of complaint was that her quarters and location were too hot. For her comfort and convenience she was moved from location to location throughout the working quarters and in each instance she soon thereafter engaged again upon her accusation of too much heat. The regulating thermostats and thermometers were checked and found to register 72 or 73 degrees of heat temperature. At times when other employees in the same working quarters were complaining of it being too cool, appellant was complaining of it being too hot. Appellant was given the privilege of selecting any location suitable to her, which she did, but her complaints of too much heat persisted. There is evidence that she was non-cooperative, that she would move from her machine to another without authority so to do, that she was found asleep in the first aid room, that she ripped down a cardboard placed by the supervisor over a register to deflect the cold air draft complained of by some of the other women employees, that in the summer she complained of the heaters blowing heat upon her and to satisfy her that the heat was shut off and there was no heat from the heaters, the pipes were disconnected and the temperature taken within the pipe which showed 3 degrees cooler than the temperature in the room, and that on several occasions she refused to return to her work. There was also testimony that other machine workers in the vicinity of appellant's location made no complaint of too much heat. On October 5, 1954, appellant again complained of too much heat and after an hour and a

half of talking and reasoning by the Plant Manager she agreed to go back to work. Finally on October 8, 1954, she complained again of the heat and three times refused to go back to her work, although the thermostats which were set at 71 degrees had turned off the heat and the thermometer registered 73 degrees. She was then discharged by the employer.

Appellant testified that it was so hot that she had to wear a "paper" to protect her from the heat and that she "couldn't stay there;" that on January 7, 1954, she had a mild heat stroke; that when she first began working for said appellee the employees had thermometers on their machines but these were taken away and her request for a thermometer was refused; that the "management" would turn off the air registers and ventilating fans and there was no circulation. There was also some testimony to the effect that some of the other women employees had complained of excessive heat, that one of the women had become overheated "in the summer time" and another had collapsed as the result, as her doctor told her, of "lack of oxygen."

Appellant asserts, as the basis of her assignment, that the decision of the Board is contrary to law, that the facts found by the Board do not sustain its decision, and that there is insufficient evidence to sustain the facts so found.

As to the first proposition that the facts found do not sustain the Board's decision, appellant says that "there is a complete failure to show that the appellant held any *evil design* or *wrongful intent* towards her employer," and cites and quotes from the case of *A. Winer, Inc.* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 638, 641, 95 N. E. 2d 214. That case did not hold that the Board must find such facts. Nor do we understand that a decision by

the Board that a claimant has been discharged for misconduct in connection with his work cannot be sustained unless it is found that the claimant held or manifested an evil design or wrongful intent. There are, no doubt, cases wherein the circumstances as disclosed by the evidence may warrant such a finding. In this regard, see *Massengale* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 604, 94 N. E. 2d 673. However, the circumstances as established by the evidence in the instant case require no such fact to be found by the Board to sustain the decision appealed from. It seems, also, that appellant has confused her announced contention that the facts as found do not sustain the offensive decision with an asserted failure of the evidence to support the alleged particular facts.

In connection with her said first proposition, appellant adds that the Board did not find that "she was guilty of willful and wanton disregard of the employer's interest." No authority is cited holding that the Board must find such facts in any certain words. Further, the nature and appropriateness of the facts found by the Board rests, we think, in the circumstances made manifest by the evidence in each particular case. The properly substantiated act or conduct of the employee may, in one case, show a wanton or willful disregard of the employer's interest, and in another case a deliberate violation of the employer's rules, while in yet another case, a wrongful intent; and the evidence in a particular case may be such as to show, as frequently appears, acts or conduct encompassing several or all of the noted infractions evidencing "misconduct" within the meaning of the unemployment compensation acts.

The Review Board, composed, as it often is, of men of practical knowledge and perhaps without legal train-

ing, is not stifled in its proceedings and exercise of statutory functions by the technical niceties that often embarrasses the dispensation of justice in the orthodox legal forums. And if its findings, taken in entirety and in relative proportion, make manifest that the acts and conduct of the claimant in one or more particulars constitute "misconduct" within the meaning of the Unemployment Compensation Act, as such "misconduct" has been interpreted and defined by our courts, [See, *Merkle* v. *Review Bd., Emp. Sec. Div.* (1950), 120 Ind. App. 108, 90 N. E. 2d 524; *A. Winer, Inc.* v. *Review Bd., Emp. Sec. Div.* (1950), *supra,*] such findings, in that particular, are sufficient to support the Board's decision without the necessity on the part of the Board of expressing such misconduct in any particularized words or any technical language.

Appellant urges, as before stated, that the facts found by the Board are not sustained by sufficient evidence and, in particular, says that the finding that "The thermometer which the foreman checked is situated a few feet from where the claimant worked . . ." is devoid of any supporting evidence, that the finding that "The Division Foreman checked the temperature near the claimant's machine and found it to be 73 degrees" is not supported by any evidence of probative value, and that the finding that "The only evidence tending to establish that the temperature in employer's establishment was ever above the low seventies, was with respect to time occurring during the hot summer months . . . ," is not supported by any evidence of probative value and is contrary to the uncontradicted evidence.

We are prone to observe that what appellant denominates as "facts" were in truth matters of evidence and

not the ultimate findings of the Board. They are found in the "Statement of Fact" prepared by the Board, which, in effect, is an epitome and summary of pertinent evidentiary facts and circumstances. While appellant's brief does not reflect that she has in any way challenged the ultimate findings of the Board, we have, nevertheless, considered each of her objections and contentions. It appears that she may be confused in some respects. She quarrels with the Board's Fact Statement that the "thermometer" checked by the foreman was a few feet from her place of work by stating that Division Exhibit No. 1 shows the "thermostat" was some 40 feet away. She also says that the Fact Statement that the Division Foreman checked the temperature near her machine was unsupported by any evidence of probative value, but the record contains positive testimony of such fact. [See Record, page 80, lines 4 to 14, incl.]. We find evidence in the record which supports every material fact found by the Board.

The main issue, no doubt, was whether appellant was justified in refusing to follow the directions of her supervisor and return to work at her machine, as found by the Board. Accepting the evidence most favorable to appellant, it is possible to say that a decision by the Board in her favor would have withstood a challenge by the employer; and, on the other hand, taking only the evidence most favorable to the decision rendered by the Board, it seems impervious to successful assault. The conflicting evidence on the issue was weighed by the Board and the decision adverse to appellant followed. We find no legal basis for interference therewith.

Affirmed.

NOTE.—Reported in 132 N. E. 2d 154.