253 So.2d 162 (1971)
Felix CASTILLO, Petitioner,
v.
FLORIDA DEPARTMENT OF COMMERCE et al., Respondents.
No. 71-232.
District Court of Appeal of Florida, Second District.
October 6, 1971.
*163 Julius L. Williams, Tampa, for petitioner.
Patrick H. Mears and Alex D. Littlefield, Jr., Tallahassee, for respondents.
PIERCE, Chief Judge.
In this case petitioner Felix Castillo petitions this Court to issue a writ of certiorari under F.S. section 443.07(4) (e), F.S.A., to review an order of the Florida Industrial Relations Commission under the Unemployment Compensation law, F.S. chapter 443, F.S.A.
The petition sets forth that Castillo had been an employee of Hillsborough Box Company until discharged by his employer on October 22, 1970, the reason given being his excessive absence from work. On October 28, 1970, Castillo filed his Initial Claim for Benefits, stating among other things that he had "lost his job because: Fired Due to absence D So." On November 3, 1970, a Fact-Finding Report was completed and filed in the Unemployment Compensation office by the local Claims Interviewer, stating that Felix had been discharged "by Mr. Irving List, soninlaw of the owner" because of several absences from work due to "personal problems". Castillo had told the Fact Finder that "I was fired because I missed too much. I'd rather not say what the personal problem was. I had missed about 2 or 3 days about 2 mo. ago because my daughter who lives in New York was in a serious accident. I did not notify Mr. List before I left. I did not call him nor contact him while I was up there. I was tow motor man & shipping clerk. Mr. List claims he had to do my work when I was absent." Mr. List told the Fact Finder that Castillo worked on a 40 hour week job except when he would be needed for overtime, but that during the preceding 11 weeks he "worked less than 40 hours on 5 different weeks. His was a job where he was needed. He had personal problems. Tho't the Mafia was about to get him. Usually took Monday or Friday or both days off." On November 6, 1970 List as the employer stated on a departmental form filed with the local Agency that Castillo "was absent from work seven days in the last three months, without good reason, such as illness. His job was supplying materials to the various departments in the factory, and in order to keep the factory running smoothly it is necessary to have a man on this job who will be reasonably regular in his attendance at work."
On November 12, 1970, Castillo was notified by the Unemployment Compensation Agency that he had been disqualified from receiving unemployment compensation, the reason given being that "You were discharged for excessive unauthorized absence. You were expected to be on the job unless ill or incapacitated. You were not ill, and your absenteeism was in disregard of your employer's interests."
On November 19, 1970, Castillo filed his Notice of Appeal to the Appeals Referee, pursuant to the Statute, setting forth as his reasons for the appeal: "I feel my personal problems were a good reason to be absent from work." Upon due notice, the hearing was held before the Appeals Referee at which Mr. List was present and testified for the employer, and Castillo was present and testified on his own behalf. List testified that he was general manager of the plant, that Castillo was their warehouseman, who had been employed by the company about two years before his discharge, that absenteeism from work was his problem, that "towards the end, the last two and a half months, he missed about six days out of that time. And that was regular days. There are days that I did ask him to come in to possibly take an inventory and it seems like to me when I needed him the most, he wasn't there. There are times *164 that I  you know  his job was different from other people because in the plant we can fill in with other people * * * We just shift people around. But when he was gone, really, the whole plant was shut down because we had  his job was to bring raw materials in which we could make boxes of and you know, kind of keep the plant going. So it meant that either I, personally, had to do it or find somebody to do it and  he does, you know, warehouseman is a responsible job and I  I  I felt this way about it. The man has an excellent record, as far as work is concerned. He's an excellent worker and I'd recommend him anywhere. But I  really, I explained to him several times that I could not, you know, tolerate absenteeism because it just threw my whole plant into a turmoil and so towards the end, I just  I just told him, I said, Felix, I have to make a change. And he had discussed with me why  the reasons he was absent which, you know, I let him explain. And although  I mean, you know, they were of a kind of a personal nature and I thought it was something he should have straightened out himself * * *"
Castillo in his own behalf testified in a random manner that he had been "beaten up by three men" and had received threats over telephone, all of which "had me sick in the mind and I couldn't think and couldn't sleep and, believe me, I couldn't even eat sometimes thinking of why anybody want to hurt me". He did not check with the police "because I had no proof who they are".
On January 12, 1971, the Appeals Referee issued and filed his decision in the matter finding that Castillo's discharge of employment "was for misconduct connected with his work within the meaning of the unemployment compensation law", and affirming his previous disqualification to receive unemployment benefits.
On January 18, 1971, Castillo filed his Application for Leave to Appeal to the Industrial Relations Commission and on February 25, 1971, the Commission denied his said Application.
The matter is now before this Court on Castillo's certiorari application to review the administrative tribunal's decision denying compensation. As reasons for granting the writ, Castillo alleges to this Court that "in the decision of the * * * Commission and the antecedent proceedings upon which it is based, there was a failure to accord to uncontradicted credible testimony taken before the Appeals Referee * * * the probative effect attributed to it by law * * *".
The Appeals Referee is the Fact-Finding Administrative Agent set up in the Statute for making the determination of the factual grounds upon which the employee was involuntarily separated from his employment. Sec. 443.07(4) (a). Judicial review of such administrative orders is by application for writ of certiorari to the appropriate District Court of Appeal, § 443.07(4) (e), which in Castillo's case means this 2nd District Court.
The rule governing judicial review by certiorari of administrative orders is that the "scope of review is narrowly limited to a determination of whether the administrative agency acted without or in excess of its jurisdiction, or whether it departed from essential requirements of law in entering the order sought to be reviewed". Bloomfield v. Mayo, Fla.App. 1960, 119 So.2d 417. But the writ does not lie merely "to pass on the correctness of ruling on the merits generally". State v. Katz, Fla.App. 1959, 108 So.2d 60; In re Dahl's Estate, Fla.App. 1961, 125 So.2d 332. If there was competent substantial evidence to support the findings in the instant case of the Appeals Referee and of the Commission, the writ should be denied. United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741.
The 3rd District Court in Spaulding v. Florida Industrial Commission, Fla.App. 1963, 154 So.2d 334, text 337, adopting a *165 construction placed upon the word "misconduct" by the Supreme Court of Wisconsin in Boynton v. Neubeck, 237 Wis. 249, 296 N.W. 636, an analogous compensation case, said:
"`Misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed `misconduct' within the meaning of the statute."
The record before us here shows that the general manager of the employer company was fair in his dealings with Castillo and in discussing his "problems" with him. He was solicitous of his welfare and tried to help him and advise him to their mutual advantage. But the fact remains that Castillo's continued absenteeism was severely hampering the employer in carrying the workload of the plant. Castillo knew that the successful operation of the Box Company depended upon his presence, which was pointed out to him by Mr. List, but he continued to absent himself because of "personal problems", which from the record appears to have been of his own making. By its very essence this was an intentional disregard of the employer's vital interests and of the employee's duties, which disregard amounts to misconduct per se.
We find there is no reason to disturb the administrative order appealed here. Therefore the petition for Writ of Certiorari is 
Denied.
HOBSON and MANN, JJ., concur.