[No. 1700-1. Division One. January 14, 1974.]

ADELINE S. WILLARD *et al., Appellants,* v. EMPLOYMENT SECURITY DEPARTMENT *et al., Respondents.*

438

*Hafer, Cassidy & Price* and *Lawrence Schwerin,* for appellants.

*Slade Gorton, Attorney General,* and *Joseph M. Little-more* and *Alan R. Krebs, Assistants,* for respondents.

SWANSON, C.J.—Appellants, formerly employed as maids at Edgewater Inn in Seattle, Washington, appeal from the trial court's affirmance of a decision by the commissioner of the State Employment Security Department which denied their claim for benefits under the employment security act. The basic question presented is whether the refusal of appellants to obey their employer's order to clean 16 rooms, instead of 15 based on their former practice and their understanding of an oral agreement between the union and their employer which limited room assignments to a maximum of 15, constitutes "misconduct" as that term is used in RCW 50.20.060 so as to disqualify appellants from any benefits under the employment security act.

These basic facts are not in dispute: Appellants were employed as maids by Edgewater Inn, Pier 67, Seattle, Washington ("employer"), and each was a member of Local 551, Hotel & Motel Club Service Employees' Union ("union"). Between July 22 and July 25, 1969, the five appellants were discharged by the employer as a result of their refusal to obey their employer's directive to clean 16 rooms instead of 15. Each appellant applied for unemployment compensation benefits, as provided for in the employment security act, and each was denied benefits in separate

determination notices issued in August 1969, which indicated that on the basis of available records the appellants were not eligible for benefits because they were discharged for misconduct. Accordingly, benefits were denied for the calendar week ending July 26, 1969, and for the 5 calendar weeks which immediately followed, ending August 30, 1969, as provided for in RCW 50.20.060.[1]

On the basis of the record made in a subsequent arbitration proceeding between the union and the employer,[2] the appeal examiner, after making findings of fact and conclusions, affirmed the department's determination that each appellant was "discharged for misconduct connected with the work," and therefore disqualified for benefits. The examiner's findings of fact state in pertinent part as follows:

> The union had an agreement with the employer covering the appellants' working conditions and was the bargaining agent for the appellants. This agreement provided that the maximum number of rooms which could be assigned to a maid was 16. The employer began operations in 1962. Although the agreement provided that the maximum number of rooms which could be assigned to any maid was 16, it had been the practice of the employer since it began business to assign no more than 15 rooms to a maid.

> On May 31, 1969, the agreement between the union and the employer, which had been in effect since June 1, 1966, expired. Subsequently, a new agreement was negotiated to be effective as of June 1, 1969. This new agreement provided an increase of wages for the maids. The

[1] RCW 50.20.060 provided in 1969: "An individual shall be disqualified for benefits for the calendar week in which he has been discharged or suspended for misconduct connected with his work and for the five calendar weeks which immediately follow such week." This statute was amended, effective April 5, 1970, but the amendment does not affect the disposition of this appeal.

[2] The union filed a grievance under the collective bargaining contract protesting that the discharge of the employees was without just cause. The case proceeded to arbitration on January 9, 1970, before an impartial arbitrator selected by the parties, Paul D. Hanlon. A court reporter was present and, by consent of the parties, his transcript was used as a record in the unemployment compensation proceedings here in question.

provision with respect to the maximum number of rooms that could be assigned remained at 16.

. . . However, after the new wage agreement went into effect, resulting in increased costs for the employer, Mr. Perry felt that it would be necessary to assign 16 rooms in those cases in which it was felt that the maid could properly handle a 16-room assignment.

. . . Because of the refusal of these maids to accept 16 rooms even if they had time to complete the assignment, they were discharged.

The examiner then concluded:

The question which we have in this matter is whether the appellants were discharged for "misconduct," as that term is used in the Act . . . A definition of the term "misconduct" which has received considerable acceptance is that set forth by the Wisconsin Supreme Court in the case of *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941) . . .

There is nothing in the record which would justify a conclusion that the employer was violating the agreement with the union in asking the appellants to accept an assignment of 16 rooms. The union was aware of the fact that the employer was contemplating the assignment of 16 rooms. It would appear that if the assignment of 16 rooms was a violation of the agreement, the union would have advised its members that the employer would be in violation of the agreement by making such an assignment. . . . We do not feel that the employer was unreasonable in asking the appellants to make a commitment as to whether they would complete an assignment of 16 rooms if at all possible. By refusing to make such a commitment, the appellants, for all practical purposes, put the employer on notice that they would not perform the work that the employer felt it had the right to ask of them. The record does not contain any evidence which would justify a conclusion that an assignment of 16 rooms was unreasonable. . . . Nevertheless, it appears to us that the appellants were unwilling to accept the increased work assignment not so much because it was unreasonable, but simply because they had arbitrarily decided that a 15-room assignment was all they were going to be willing to accept.

We have consistently taken the position that an individual commits an act of misconduct when he refuses to

comply with a reasonable order from his supervisor. We feel that the action on the part of each of the appellants was an "intentional and substantial disregard . . . of the employee's duties and obligations to his employer." Considering all of the circumstances in this case, we find it necessary to affirm the determinations from which the appeals were filed.

Thereafter, the decision of the appeal tribunal was appealed to the commissioner of the Employment Security Department, Maxine E. Daly. The commissioner adopted the appeal tribunal's findings of fact and conclusions in a decision dated June 29, 1970. The commissioner added some additional observations, but essentially concluded that there was nothing unreasonable in the action taken by the employer and that the appellants should have followed the employer's orders and then initiated grievance procedures to resolve any differences between the multi-employer agreement and the local oral agreement. The commissioner took the position that appellants had failed to obey a reasonable order of their employer and that such conduct amounted to insubordination, particularly when other avenues were readily available to resolve any misunderstanding.

The commissioner's decision was appealed to the superior court at a hearing on April 24, 1972. On May 5, 1972, the superior court adopted the findings of fact entered by the appeal tribunal on May 15, 1970, and affirmed by the commissioner on June 29, 1970, and entered a conclusion of law adopting the appeal tribunal's conclusions as affirmed by the commissioner. In addition, the trial court concluded that the commissioner of the Employment Security Department

acted within her power and has correctly construed the law, that she has not been arbitrary or capricious, and that the Commissioner's Findings of Fact are not clearly erroneous in view of the entire record as submitted and the public policy contained in the Employment Security Act.

Conclusion of law No. 2, in part. The trial court also en-

tered judgment affirming the decision of the commissioner, and this appeal followed.

The six assignments of error may be summarized as follows: First, the superior court erred in adopting by reference certain conclusions of the appeal examiner that there is

> nothing in the record which would justify a conclusion that the employer was violating the agreement with the union in asking the appellants to accept an assignment of 16 rooms,

that the employer was not "unreasonable" in asking appellants to do 16 rooms, and that appellants' refusal to work 16 rooms was "arbitrary." Second, the superior court erred in adopting the conclusion of the appeal examiner and the commissioner that the actions of appellants constituted "misconduct" as that term is used in the employment security act. Third, the superior court erred in adopting by reference the commissioner's decision to the effect that by declining to act with "prudence" and failing to accept their assignment subject to grievance procedures, appellants forfeited the right to unemployment compensation, and that "an act of insubordination constitutes 'misconduct.' "

At the outset, we note that our review of the commissioner's decision, like that of the trial court, is governed by RCW 34.04.130 as amended by the 1967 legislature which changed the standards for judicial review of administrative action to include the "clearly erroneous" test and replaced the "unsupported by material and substantial evidence" test. Thus, the limits of our review are broader in scope than a mere search to determine whether there is substantial evidence in the record to support the commissioner's decision. At the same time, the burden is on those attacking the findings of the commissioner to show that they are clearly erroneous in view of the entire record. *See Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969); *Williams v. Young,* 6 Wn. App. 494, 494 P.2d 508 (1972). In this regard, in *Ancheta,* our state Supreme Court said at page 259:

The legislature clearly intended a broader review of all of the evidence. Perhaps the best description of the "clearly erroneous" test was set forth by the United States Supreme Court in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." [Citations omitted.]

. . . But just as we do not substitute our judgment for that of the trial court, we do not expect that the superior court will substitute its judgment for that of the administrative body.

(Footnote omitted.)

Our review of the record in light of the appropriate standard convinces us that the trial court properly adopted the findings and conclusions of the appeal tribunal which were also adopted by the commissioner. The trial court correctly determined that such findings and conclusions are not "clearly erroneous in view of the entire record as submitted and the public policy contained in the act . . ." RCW 34.04.130 (6) (e). In thus affirming the trial court, we deem further discussion is necessary only as to the issue of whether the actions of the appellants under the circumstances of this case constituted "misconduct" within the meaning of RCW 50.20.060.

Thus, for the purposes of this appeal, we accept the determination of the appeal tribunal to the effect that there is no evidence to justify a conclusion that the employer was violating its agreement with the union in asking the appellants to accept an assignment of 16 rooms, particularly in view of the fact that the union apparently did not advise its members that the employer would be violating the agreement if it made such an assignment. Indeed, the record indicates that assignment of the 16th room was made only after a new collective bargaining agreement was negotiated, effective June 1, 1969, which did not incorporate the local understanding that only 15 rooms could be assigned, but rather maintained the maximum number at 16. Thus,

we accept the conclusion of the appeal tribunal that the employer was not unreasonable in asking the appellants to accept an assignment of 16 rooms and that the appellants were arbitrary in refusing to do so.

 Having thus recognized that the appellants did arbitrarily refuse to obey a reasonable order from their employer to clean 16 rooms instead of 15, based solely upon their interpretation of the local oral contract, the question remains whether such action by the appellants constitutes "misconduct" justifying a denial of unemployment benefits through the operation of RCW 50.20.060. The definition of "misconduct" under RCW 50.20.060 appears to be a matter of first impression in this state, but we believe an adequate definition appears in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636 (1941), and both parties in their briefs and the appeal examiner in his decision have indicated their acceptance of this definition as a fair statement of the law. In *Boynton,* the court stated:

> the intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Boynton* appears to be the leading case defining "misconduct" in the context of eligibility for unemployment compensation benefits, and it has been recognized in many jurisdictions. *See, e.g., Kartsonis v. District Unemployment Comp. Bd.,* 289 A.2d 370 (D.C. Ct. App. 1972); *Employment Security Comm'n v. Myers,* 17 Ariz. App. 87, 495 P.2d 857

(1972); *Castillo v. Florida Dep't of Commerce*, 253 So. 2d 162 (Fla. Ct. App. 1971); *Carter v. Employment Security Comm'n*, 364 Mich. 538, 111 N.W.2d 817 (1961); *Beaunit Mills, Inc. v. Board of Review*, 43 N.J. Super. 172, 128 A.2d 20 (1956).

For purposes of this appeal, the key to determining whether the actions of an employee constitute "misconduct" appears to be to determine whether the conduct of the employee manifests "willful or wanton disregard of the employer's interests." *See generally* 81 C.J.S. *Social Security & Public Welfare* § 162 (1953); 48 Am. Jur. *Social Security, Unemployment Insurance & Retirement Funds* § 38 (1943); Annot., 26 A.L.R.3d 1356 (1969); Annot., 146 A.L.R. 243 (1943). In this context, we note appellants recognize that the Wisconsin court has also characterized "misconduct" as being behavior of an employee which constitutes "an intentional and unreasonable interference with his employer's interest." *Baez v. Department of Indus., Labor & Human Relations*, 40 Wis. 2d 581, 588, 162 N.W.2d 576 (1968).

In light of the foregoing definition of "misconduct," appellants argue that their action in refusing to work the 16th room was based on a good-faith and correct belief that their local agreement provided for a 15-room maximum. They contend that such an insistence on contractual rights cannot be construed as a "willful and wanton disregard of the employer's interests" amounting to "misconduct" under RCW 50.20.060. In this regard, appellants point out that the employer's assignment of 16 rooms was clearly a violation of the local oral agreement because this is what the arbitrator held in making his award in the arbitration proceeding involving the union and the employer.

It must be recognized that the arbitrator's award is not binding upon the parties to this appeal. Nevertheless, the following portion of the arbitrator's opinion is instructive as to the means by which the issue here in question may be resolved:

The evidence is conflicting and at some points ambiguous,

but after a careful review of the record, the arbitrator is satisfied that these employees did indicate to the Employer, either directly or indirectly that they had no intention of doing 16 rooms under any circumstances. Having established that point, it is clear that the Employer had a right to impose some discipline. In reaching that decision, it is immaterial whether the Employer's imposition of a 16 room requirement was proper or improper. The Employer retains the right to direct his work force, and it is a basic principle of labor-management relations that an employee cannot with impunity refuse to follow a direct order of management, except in unusual situations where his health or safety might be endangered, etc., but must comply with the orders under protest and thereafter seek an appropriate remedy through the grievance machinery if he feels that the order was improper or in violation of his contract.

The arbitrator concluded that the employees should be reinstated but that an award of back pay would not be appropriate in the light of their "misconduct and insubordination."

Similarly, we hold that, under the circumstances of this case, appellants are not entitled to unemployment benefits in light of their "misconduct and insubordination." RCW 50.20.060. In this regard, we accept appellants' contention that we may uphold the trial court and the commissioner only if we are satisfied that their inquiry has gone beyond the mere determination that appellants were insubordinate in disobeying the order of their employer assigning a 16th room to a determination that the order of the employer was reasonable under the circumstances. *Baez v. Department of Indus., Labor & Human Relations, supra; Boynton Cab Co. v. Neubeck, supra; see generally* Annot., 26 A.L.R.3d 1333 (1969). However, for reasons previously stated, we accept the finding of the appeal tribunal, subsequently adopted by the commissioner and the trial court, that the order of the employer was not unreasonable, and therefore we conclude the refusal of the appellants to obey such an order properly may be regarded as an unreasonable and intentional disregard of their employer's interest

which amounts to "misconduct" within the meaning of RCW 50.20.060. Authorities relied upon by appellants are inapposite either because they involve employees' participation in protected strike activities, *see Frei v. Unemployment Compensation Bd. of Review,* 5 Pa. Cmwlth. 190, 289 A.2d 769 (1972); *In re Heitzenrater,* 19 N.Y.2d 1, 224 N.E.2d 72 (1966), or because the order of the employer may be characterized as "unreasonable," *see Frazier v. Review Bd. of Indiana Employment Security Division,* 134 Ind. App. 418, 188 N.E.2d 281 (1963). To the extent that *Beaird-Poulan, Inc. v. Brady,* 154 So. 2d 589 (La. Ct. App. 1963), also relied upon by appellants, rests its holding on other than a single incident of "hotheadedness" by an employee not rising to disobedience of a reasonable order by his employer, we decline to follow it. *See Atkins v. Doyal,* 274 So. 2d 438 (La. Ct. App. 1973); *Rankin v. Doyal,* 223 So. 2d 214 (La. Ct. App. 1969); *Ross v. Holiday Inn,* 191 So. 2d 335 (La. Ct. App. 1966).

In view of our holding that the trial court correctly determined that appellants under the circumstances here in question committed "misconduct" in refusing to obey the reasonable order of their employer, it is apparent that the trial court was also correct in adopting the commissioner's suggestion that to the extent appellants believed the employer's order was contrary to a local oral agreement, their remedy was to obey the order under protest and then initiate grievance procedures under the collective bargaining agreement to resolve any conflicts between that contract and the local oral agreement. In arguing they need not have resorted to such grievance procedures, appellants rely solely upon *Webster v. Potlatch Forests, Inc.,* 68 Idaho 1, 187 P.2d 527 (1947). In *Webster,* the court held that the failure of a sawyer in a lumber mill to initiate grievance procedures prior to refusing his employer's order to operate a new electrical saw did not constitute "misconduct" which would deprive him of unemployment benefits under the Idaho statute. To the extent *Webster* may be deemed authority for the proposition advanced by appellants, we are

not persuaded by it. In any event, the *Webster* opinion is inconclusive on the rule of law properly applicable in this state because of distinguishing features of the Idaho statute and because the Idaho court may have been persuaded to hold as it did because of testimony indicating the dangerous character of the saw which the employee refused to operate. As to the latter point, there may well be situations involving the physical health and safety of an employee which would justify the employee's refusal of an otherwise reasonable order of his employer. *See Baez v. Department of Indus., Labor & Human Relations, supra; Soman v. Glenshaw Glass Co.*, 28 App. Div. 2d 219, 284 N.Y.S.2d 411 (1967).

In the case at bar, no overriding health or safety factors are present. We therefore conclude that the appellants' arbitrary refusal to follow a reasonable order of their employer, even though it was subsequently determined by the arbitrator that such order was improperly given, constitutes "misconduct" for purposes of RCW 50.20.060 because it manifests an intention to interfere unreasonably with the employer's legitimate interests. Under such circumstances, the trial court correctly affirmed the commissioner's denial of unemployment benefits.

Judgment affirmed.

JAMES and WILLIAMS, JJ., concur.